UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIDEOFOR AJAELO, CDCR #F-73516,<br><br>       Plaintiff,<br><br>vs.<br><br>R. ESTRADA, et al.,<br><br>       Defendants. | Case No.: 24-cv-2472-AJB-MMP<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND**<br><br>**(2) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)** |

  Plaintiff Jideofor Ajaelo is a state inmate proceeding pro se with a civil rights Complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Plaintiff has also filed a motion to proceed in forma pauperis ("IFP"). (Doc. No. 2.)

**I. Motion to Proceed IFP**

  All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee

Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). A prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1) & (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1) & (2); *Bruce*, 577 U.S. at 84.

In support of his IFP motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report and Prison Certificate attested to by a CDCR trust account official. (Doc. No. 3 at 3.) The document shows he had an average monthly balance of $25.00 and average monthly deposits of $87.50, with an available balance of $0.00. *Id*. The Court **GRANTS** Plaintiff's motion to proceed IFP and assesses no initial partial filing fee. *See Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Plaintiff is required to pay the $350 balance pursuant to the installment payment provisions of 28 U.S.C. § 1915(b)(1).

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua*

*sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.     Allegations in the Complaint**

Plaintiff alleges that on January 13, 2024, while housed at Centinela State Prison in Imperial, California, he was walking on the recreational yard when Defendant Sergeant Estrada "ordered Plaintiff to remove his durag (or Do-rag), citing an unwritten policy

1  prohibiting its use outside." (Doc. No. 1 at 3.) Plaintiff had worn a durag, which are
2  approved by the CDCR for sale and purchase at the prison canteen, on the yard regularly
3  for over 14 years, and he told Estrada that the rule prohibiting him from wearing it was
4  racially discriminatory because "durags are predominately worn by Black inmates to
5  protect and manage their hair." (*Id*. at 3–4.) When Estrada threatened Plaintiff with a Rules
6  Violation Report ("RVR") if he did not comply, Plaintiff complied by returning to his
7  housing unit. (*Id*. at 3.)

8        On January 20, 2024, Plaintiff received an RVR by Estrada charging him with
9  delaying a peace officer in the performance of duties. (*Id*.) A hearing on the RVR was held
10 on January 25, 2024, at which Defendant Senior Hearing Officer Alonzo, in response to
11 Plaintiff pointing out he had complied with the order and did not delay Estrada in the
12 performance of his duties and that no CDCR regulation prohibits durags on the yard,
13 unilaterally changed the charge to disobeying an order and found Plaintiff guilty. (*Id*.)
14 Plaintiff was sentenced to 30 days loss of credits, 10 days confinement to quarters, and 90
15 days loss of phone, yard, day room, and package privileges. (*Id*. at 5.) Plaintiff was
16 informed he could wear a durag in the housing unit but not on the yard, even though other
17 head coverings are allowed to be worn on the yard, including bandanas, straw hats, and
18 handkerchiefs, none of which are as effective as durags "both for practical and cultural
19 reasons, largely due to the unique texture and needs of Black hair, which often tend to be
20 more curly, coily, and prone to dryness." (*Id*. at 4–5.) His inmate grievance was granted in
21 which he complained there is no CDCR regulation against wearing a "wave cap" on the
22 yard and that the enforcement of such an unofficial regulation was racially discriminatory.
23 (Doc. No. 1-4 at 2–3.) Plaintiff states he settled a civil rights action in 2022 "related to bias
24 treatment by" Centinela State Prison staff "for issuing an RVR that involved racial
25 discrimination" in which Defendant Alonzo was the senior hearing officer, which he
26 alleges "indicat[es] a retaliatory motive" here. (*Id*. at 4, 7–8.)

27       As to the remaining Defendants named in the Complaint, Plaintiff alleges Defendant
28 Chief Disciplinary Officer Assistant Warden Black "approved the [RVR]'s findings to be

sent to records." (*Id*. at 2.) He alleges Defendant Warden Guzman is "in charge of policy and procedures at Centinela State Prison," and that the only other Defendants, John and Jane Doe, are "whomever has the authority to rescind the [RVR]." (*Id*.)

Plaintiff claims that denying him the right to wear a durag on the yard and disciplining him for doing so violated his First Amendment right to free expression (count one), was a denial of equal protection under the Fourteenth Amendment (count two), and amounted to retaliation under the First Amendment for filing the prior civil rights action (count three). (*Id*. at 4–8.) He states that he suffers from an anxiety disorder and that the Defendants' actions have caused him to experience appetite loss, sleeplessness, headaches and weight loss. (*Id*. at 5.) He seeks a declaration that his rights were violated, expungement of the RVR, punitive and compensatory damages, an injunction against the enforcement of the unwritten policy prohibiting wearing durags and similar head coverings by Black inmates on the yard, as well as costs and fees. (*Id*. at 10.)

**C.     Discussion**

Plaintiff first alleges the enforcement of an unofficial regulation prohibiting him from wearing a durag on the yard violates his right to free expression under the First Amendment. Prisoners retain limited First Amendment rights to free expression and association. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) ("[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context, for instance, some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'") (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). A prison regulation can impinge on inmate expression in violation of the First Amendment if: (1) the "the logical connection between the regulation and the asserted goal is [] so remote as to render the policy arbitrary or irrational," (2) it deprives the inmate of all means of expression and other avenues of expression are unavailable, and (3) the impact "on guards and other inmates and on the allocation of prison resources generally" is minimal; and (4) the rule at issue is an

1 "exaggerated response to prison concerns." *Turner v. Safley*, 482 U.S. 78, 89–90 (1987).

2   Plaintiff has overcome the "low threshold" on screening of plausibly alleging Defendants Estrada and Alonzo violated his First Amendment right to free expression when they enforced an unofficial regulation prohibiting Plaintiff from wearing a durag on the yard. He has arguably adequately alleged the lack of a legitimate penological interest in enforcement of that regulation because he has pled that other similar head coverings are approved for use on the yard, and that the prohibition at issue is not rationally related to a legitimate and neutral government objective because it prohibits the only head covering acceptable for Black inmates, which he has been wearing for 14 years without incident, there are no alternative avenues to exercise his First Amendment right, and that allowing alternative head coverings similar to a durag but lacking its racially-expressive nature alleges that enforcement of the regulation is an exaggerated response by prison officials. Thus, the allegations in the Complaint are sufficient to survive the "low threshold" of the screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b) with respect to a First Amendment free expression claim against Defendants Estrada and Alonzo. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1123; *Turner*, 482 U.S. 78, 89–90.

  Plaintiff also claims Defendants Estrada and Alonzo denied him equal protection under the Fourteenth Amendment by subjecting him to racial discrimination by prohibiting him from wearing a durag on the yard and subjecting him to disciplinary proceedings despite his compliance with the order not to wear it on the yard. The Equal Protection Clause of the Fourteenth Amendment requires persons who are similarly situated to be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). A plaintiff can state an equal protection claim by setting forth facts which plausibly allege intentional discrimination based on membership in a protected class. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, national origin"

as examples of characteristics protected by the Equal Protection Clause).

The allegations in the Complaint that Defendants Estrada and Alonzo prevented Plaintiff from, and disciplined him for, wearing a CDCR-approved head covering on the yard, which he and other Black inmates have worn for practical and cultural reasons for years without incident, based on an unofficial non-CDCR regulation against wearing those head coverings on the yard, while allowing non-Black inmates to wear similar head coverings, survive the "low threshold" to survive screening as to a Fourteenth Amendment equal protection claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1123; *Hartmann*, 707 F.3d at 1123; *Maynard*, 37 F.3d at 1404.

Finally, Plaintiff claims Defendant Estrada filed a false RVR and Defendant Alonzo unfairly adjudicated it in retaliation for filing a prior civil rights action. "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Plaintiff has plausibly alleged an adverse action was taken against him for his protected activity of filing a civil rights action by the filing of an allegedly false disciplinary charge and that it created a chilling effect. *Watison*, 668 F.3d at 1114–15. He has also plausibly alleged the Defendants' actions did not reasonably advance a legitimate correctional goal because he alleges there are no established CDCR regulations against wearing a CDCR-approved durag on the yard, which are similar to other head coverings allowed on the yard, and therefore Defendants' actions were arbitrary. Plaintiff has met the "low threshold" to survive screening as to a First Amendment retaliation claim against Defendants Estrada and Alonzo. *Watison*, 668 F.3d at 1112, 1114–15; *Wilhelm*, 680 F.3d at 1123; *Rhodes*, 408 F.3d at 567–68.

Accordingly, Plaintiff is entitled to have the U.S. Marshal effect service of the summons and Complaint against Defendants Estrada and Alonzo with respect to the First

Amendment free expression claim, the Fourteenth Amendment equal protection claim, and the First Amendment retaliation claim in the Complaint. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915."). The Court cautions Plaintiff that the *sua sponte* screening process is "cumulative of, not a substitute for, any subsequent [motion to dismiss] that the defendant[s] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

However, Plaintiff has not plausibly stated a claim against any of the remaining Defendants. He merely alleges Defendant Chief Disciplinary Officer Assistant Warden Black "approved the [RVR]'s findings to be sent to records," that Defendant Warden Guzman is "in charge of policy and procedures at Centinela State Prison," and that Defendants John and Jane Doe are "whomever has the authority to rescind the [RVR]." (Doc. No. 1 at 2.) "A supervisory official may be held liable under § 1983 only if 'there exists either (1) his or her personal involvement in the constitutional violation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). "In a section 1983 claim, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal quotation marks omitted).

The Complaint as drafted contains conclusory allegations against Defendants Black, Guzman and the Does regarding their participation in the alleged constitutional violations, as there are no factual allegations any of these Defendants were aware of or participated in or directed the actions taken by Defendants Estrada and Alonzo, merely that they should have or could have done so in their supervisory capacities. If Plaintiff wishes to bring a

claim against these Defendants, he must set forth factual allegations identifying individual acts or omissions by each person related to the application of the unofficial regulation prohibiting him wearing a durag on the yard or their knowledge of or involvement in the RVR which *resulted* in a constitutional violation. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). Plaintiff may not rely on conclusory allegations of participation in the violation of his civil rights such as are contained in the Complaint, lacking as they do any facts showing these Defendants were aware of and participated in the alleged constitutional violations. *Iqbal*, 556 U.S. at 678 (noting that a complaint is subject to dismissal for failure to state a claim if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and the "mere possibility of misconduct" falls short of meeting this plausibility standard).

Accordingly, the claims in the Complaint against Defendants Black, Guzman and John and Jane Doe are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 678.

### D. Plaintiff's Options

Because the Court has determined that Plaintiff's claims against Defendants Estrada and Alonzo survive the *sua sponte* screening process but his remaining claims against the remaining Defendants do not, Plaintiff is given the opportunity to (1) notify the Court of his intent to proceed only with the First and Fourteenth Amendment claims in the Complaint against Defendants Estrada and Alonzo; or (2) file a First Amended Complaint that attempts to correct any or all of the deficiencies of pleading identified in this Order. **Plaintiff must choose one of those options within forty-five (45) days from the date this Order is filed.** If Plaintiff notifies the Court he wishes to proceed only with his claims against Defendants Estrada and Alonzo, the Court will issue an Order directing the Clerk to issue the summons as to those Defendants and direct the U.S. Marshal to effect service

of the summons and Complaint on Defendants Estrada and Alonzo, and all remaining claims and Defendants will remain dismissed from this action.

### III. Conclusion and Orders

Accordingly, good cause appearing, the Court:

1) **GRANTS** Plaintiff's Motion to Proceed IFP (Doc. No. 2).

2) **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4) **DISMISSES** all claims against all Defendants in the Complaint for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) with the exception of the First and Fourteenth Amendment claims against Defendants Estrada and Alonzo.

5) **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to (1) notify the Court of his intent to proceed only with his claims in the Complaint against Defendants Estrada and Alonzo; or (2) file a First Amended Complaint that attempts to correct any or all of the deficiencies of pleading identified in this Order. Any amended complaint must be complete by itself without reference to any prior version of the complaint. Defendants not named and any claims not re-alleged in an amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

///

1 ///
2 ///
3  Failure to respond to this Order will result in dismissal of this action for failure to
4 prosecute. *See* Fed. R. Civ. P. 41(b) (providing for involuntary dismissal for failure to
5 prosecute or comply with the federal rules or court order).

7  **IT IS SO ORDERED**.

9 Dated: February 24, 2025

_____
Hon. Anthony J. Battaglia
United States District Judge